J. S17010/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRIAN CHRISTOPHER POPE, JR., | : | |
| | : | |
| Appellant | : | No. 589 WDA 2014 |

Appeal from the Judgment of Sentence March 21, 2014
In the Court of Common Pleas of Bedford County
Criminal Division No(s).: CP-05-CR-0000101-2013

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED MARCH 24, 2015**

Appellant, Brian Christopher Pope, Jr., appeals from the judgment of sentence entered in the Bedford County Court of Common Pleas following a jury trial and his convictions for, *inter alia*, robbery,[1] conspiracy,[2] receiving stolen property,[3] persons not to possess firearms,[4] theft,[5] terroristic

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

[2] 18 Pa.C.S. § 903(c).

[3] 18 Pa.C.S. § 3925(a).

[4] 18 Pa.C.S. § 6105(a)(1).

[5] 18 Pa.C.S. § 3921(a).

threats,[6] and recklessly endangering another person.[7] He challenges the discretionary aspects of his aggregate sentence of nineteen to forty-one years' imprisonment. We affirm.

We adopt the facts and procedural history set forth in the trial court's decision. **See** Trial Ct. Op., 8/25/14, at 1-4. Appellant filed, and the court denied, a timely post-sentence motion. Appellant timely appealed and also filed and served a Pa.R.A.P. 1925(b) statement that same day. Two days later, the court, in an apparent oversight, ordered Appellant to comply with Pa.R.A.P. 1925(b).

Appellant raises the following issue:

> Given the lower court's cited justifications, did it commit an abuse of discretion in imposing consecutive, aggravated-range terms of imprisonment when sentencing [Appellant], thereby imposing an aggregate sentence too harsh relative to the underlying criminal conduct, and neglecting or failing to take adequate consideration of his rehabilitative needs?

Appellant's Brief at 6. For his sole issue, Appellant contends the trial court failed to consider his character, placed undue emphasis on the seriousness of the offenses, and did not satisfy the sentencing factors. We hold Appellant is due no relief.

This Court has stated that

---

[6] 18 Pa.C.S. § 2706(a)(1).

[7] 18 Pa.C.S. § 2705.

> [c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right. Prior to reaching the merits of a discretionary sentencing issue:
>
> > [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing.

*Commonwealth v. Evans*, 901 A.2d 528, 533-34 (Pa. Super. 2006) (some citations and punctuation omitted).

> [T]he Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.*, the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm . . . .

*Commonwealth v. Googins*, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*). "Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.*

We are aware that generally, a challenge to the trial court's discretion to impose its sentences concurrently or consecutively ordinarily does not raise a substantial question. **Commonwealth v. Mastromarino**, 2 A.3d 581, 586-87 (Pa. Super. 2010).

> In fact, this Court has recognized the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment. That is in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case.

**Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super.) (some punctuation and citations omitted), *appeal denied*, 77 A.3d 1258 (Pa. 2013).

Instantly, Appellant timely appealed, preserved his issue in his post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. **See Evans**, 901 A.2d at 533. Appellant's Rule 2119(f) statement substantially complies with **Goggins**. However, we point out that, generally, a challenge to the consecutive nature of a sentence does not raise a substantial question. **See Commonwealth v. Dodge**, 77 A.3d 1263, 1270 (Pa. Super. 2013) ("To make it clear, a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive

sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question." (citation omitted)); ***Mastromarino***, ***supra***. Here, Appellant has raised a substantial question to the extent he asserts that his aggregate sentence was contrary to the fundamental norms underlying the sentencing process. ***See Goggins***, ***supra***. Moreover, Appellant argues that while his sentences were within the guidelines, the consecutive nature of the sentences renders the aggregate term manifestly excessive. Appellant's Brief at 11-12. Accordingly, we examine the merits.

Assuming that Appellant has presented a substantial question, after careful review of the record, the parties' briefs, and the opinion of the Honorable Travis W. Livengood, we affirm on the basis of the trial court's opinion. ***See*** Trial Ct. Op. at 6-10 (holding Appellant's prior record, including armed robbery conviction four years ago, violating supervision twice, using firearm to rob during drug deal, and car chase on highway involving police, justified sentence). We therefore affirm the judgment of sentence. ***See Evans***, 901 A.2d at 533-34.

Judgment of sentence affirmed.

Judge Shogan joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

- 5 -

J. S17010/15

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015

IN THE COURT OF COMMON PLEAS OF BEDFORD COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,

v.

BRIAN C. POPE,
    DEFENDANT

NO: 101 FOR 2013

CRIMINAL DIVISION

## PA.R.A.P. 1925 OPINION

### I. SUMMARY OF CASE

Defendant was charged with Robbery and numerous other offenses from an incident that occurred on February 17, 2013. We held a jury trial on January 27, 2014 and the jury convicted Defendant of nearly every offense in the criminal information.[1] On March 21, 2014, we sentenced Defendant to an aggregate sentence of 19 years to 41 years in a State Prison. Defendant filed post-sentence motions which we denied without a hearing, and Defendant now brings the instant appeal.

### II. ISSUES

### II(A). SUFFICIENCY OF THE EVIDENCE

---

[1] Defendant was acquitted of two counts of Recklessly Endangering Another Person (counts 9 and 12). The Commonwealth withdrew count 7 prior to the jury receiving the case for deliberation.

1

Defendant argues that the jury's verdict was unsupported by sufficient evidence. The standard for a challenge to the sufficiency of the evidence is well settled:

> "...[whether] viewing all the evidence at trial, as well as all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth, the jury could have found that each element of the offense was proven beyond a reasonable doubt. Both direct and circumstantial evidence can be considered equally when assessing the sufficiency of evidence."

*Commonwealth v. Woodruff*, 668 A.2d 1158, 1159-60 (Pa.Super. 1995).

Defendant was convicted of Robbery, Criminal Conspiracy, Receiving Stolen Property, Unlawful Possession of Firearms, Theft by Unlawful Taking, Terroristic Threats and Recklessly Endangering Another Person. At the trial, Defendant's co-conspirator, Ashley Nail, testified that she and Defendant arranged to buy marijuana from Jeremy Lantz, Tyler Beckett, and Mark Scott on February 17, 2013. Nail testified that she and Defendant did not take money because they agreed to take the marijuana from the dealers. Defendant and Nail met the drug dealers at a pre-arranged location. Nail testified that, after Defendant was handed the marijuana,

2

Defendant pulled out a handgun, pointed the handgun at Lantz, Beckett and Scott, and told them he was taking the marijuana. Jeremy Lantz remained in Defendant's vehicle, while Beckett and Scott got back into their vehicle. Defendant then drove away with Nail and Lantz in the vehicle, with Beckett and Scott chasing behind in another vehicle. Nail testified that Defendant threw the firearm out the window during this chase. Defendant's vehicle was eventually stopped by Pennsylvania State Troopers after they were contacted by Beckett.

Mark Scott testified that, after the exchange of the marijuana, Defendant went to the trunk of his car, pulled out a handgun and ordered Beckett and Scott to exit Defendant's vehicle. Scott testified that Defendant pointed the firearm at all three of them (Scott, Lantz, Beckett) during the incident. Tyler Beckett's testimony was very similar to Scott's. Beckett also testified that he thought Defendant was going to shoot and kill him when Defendant pointed the gun at him.

Pennsylvania State Trooper Jeff Hetzel testified that he interviewed Jeremy Lantz, who informed him of the location where Defendant had

3

thrown the handgun from the vehicle during the chase. Trooper Hetzel traveled to the area identified by Lantz, and Trooper Hetzel located and seized a firearm. According to Pennsylvania State Trooper Eric Griswold, Defendant later admitted to the State Police that the firearm found was the one he used during the incident. Trooper Griswold also testified that Defendant admitted to grabbing a firearm and telling Beckett he wasn't paying for the marijuana and to throwing the firearm from the vehicle during the chase. Defendant stipulated at trial that he was disqualified from possessing a firearm due to a prior Robbery conviction.

Accepting the above recited testimony as true, and affording all favorable inferences to the Commonwealth, we find that the jury had more than a sufficient basis to support its verdicts. Three eye witnesses testified that Defendant conspired to steal marijuana with another person and that he did so at gunpoint, endangering three other individuals.[2] We therefore see no merit to Defendant's argument.

---

[2] We do note, however, that the jury acquitted Defendant of one count of Terroristic Threats and one count of Recklessly Endangering Another Person, specifically regarding Jeremy Lantz as the alleged victim.

4

## II(B). WEIGHT OF THE EVIDENCE

Defendant also argues that the jury's verdicts are against the weight of the evidence. The considerations for a challenge to the weight of the evidence is as follows:

> "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, 'the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."' It has often been stated that 'a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.'"

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

Defendant's argument is without merit. Three eyewitnesses implicated Defendant in the incident and Defendant even admitted to committing several offenses.[3] Admittedly, discrepancies did exist between the witnesses, which was not unexpected given that all of primary

---

[3] Specifically, the Trooper testified that Defendant admitted to using the firearm and telling the drug dealers that he was taking the marijuana.

5

witnesses were participating in a illegal drug deal.[4] However, whatever discrepancies appeared were minor in scope and certainly do not rise to a level that shocks our sense of justice in view of the jury's verdict.

## II(C). SENTENCE

Defendant argues that we abused our discretion in imposing sentence. Specifically, Defendant argues that we erred in imposing an aggravated range sentence under the sentencing guidelines. Given Defendant's argument, we first note that we imposed an aggravated range sentence only upon counts 1 and 2, being the Robbery and Conspiracy to Commit Robbery charges.[5] Since Defendant's statement of matters complained of on appeal complain only of the aggravated range sentence, we will focus our attention to these two counts.

---

[4] Indeed, one witness, Jeremy Lantz, refused to testify at all, and was held in contempt of court and sentenced to one year of incarceration.

[5] Our sentences on the remaining offenses were within the standard range for the Deadly Weapon Used sentencing guideline matrix. On counts 4, 13 and 14, we did not impose any sentence due to their merger with the greater offenses.

6

After Defendant was convicted by the jury on January 27, 2014, we ordered the Bedford County Probation Office to complete a Pre-Sentence Investigation and scheduled a sentencing hearing on March 21, 2014. Prior to the sentencing hearing, we reviewed the Pre-Sentence Investigation.[6] Given that Defendant had used a firearm in the offenses, we applied the Deadly Weapon Used sentencing guideline matrix.[7] On count 1, we imposed a sentence of 8 and 1/2 years to 20 years incarceration. On count 2, we imposed a sentence of 5 and 1/2 years to 11 years incarceration, consecutive to count 1.

As we stated on the record at the sentencing hearing, we found an aggravated range sentence to be appropriate primarily given our concerns for the protection of the public due to Defendant's repeated violent behavior in similar offenses. Specifically, Defendant was convicted of

---

[6] We have included the Pre-Sentence Investigation in the record to be transmitted for appellate review.

[7] On count 1, the guideline range was 78-90 months with the aggravated/mitigated range of 12 months. On count 2, the guideline range was 66-78 months with the aggravated/mitigated range of 12 months. Defendant did not object to application of these ranges.

7

Armed Robbery in Maryland in 2009. As we noted at the sentencing hearing, we did *not* sentence in the aggravated range simply because Defendant had a prior robbery.[8] Our reasons for aggravating the sentence were much more specific to Defendant's prior criminal conduct. First, Defendant's conviction for Armed Robbery was relatively recent in time to the instant case, which was indicative to us of a high probability for recidivism. Second, Defendant had violated his supervision on the prior Armed Robbery case two separate times, serving incarceration on both occasions—highly suggestive that Defendant would not perform well on parole or probation. In addition, while Defendant engaged in highly dangerous activity that placed three individuals at risk, Defendant also

_____

[8] Such a practice could be reversible error by increasing a sentence for a reason that is already taken into account by Defendant's prior record score and the corresponding guidelines.

8

exacerbated the danger to the public by engaging in a car chase after taking a person into his vehicle at gunpoint.[9]

As we also noted at the sentencing hearing, we do not find that Defendant's prior record score adequately reflects his criminal record.[10] Specifically, Defendant's prior record score does not take into account a misdemeanor drug possession in 2008, nor does it reflect the total effect of his conviction of Possession with the Intent to Deliver a Controlled Substance in 2010.[11] Finally, while we did impose an aggravated sentence on the two offenses which we believe most endangered public safety, we

---

[9] While it became apparent during the trial that Jeremy Lantz may have been a willing participant in the robbery and being seized by Defendant, the other participants in the incident were obviously unaware of any such agreement between Defendant and Lantz. Therefore, any conspiracy between Defendant and Lantz is of little moment to us where Defendant's actions nonetheless set in motion an inherently dangerous car chase involving a firearm that endangered the public at large.

[10] We calculated Defendant's prior record score as a 5, to which Defendant did not object.

[11] To step through the calculation, Defendant's Armed Robbery counts as a 4 prior record score, and his Possession with the Intent to Deliver a Controlled Substance as a 2 prior record score, for a combined total of 6. Even without Defendant's misdemeanor drug possession conviction, a prior record score of 5 does not fully account for the seriousness of Defendant's prior criminal history.

9

did—to Defendant's benefit—impose five of the counts concurrently to one another.[12] Based upon or review of the Pre-Sentence Investigation and our consideration of the gravity of the offense, the protection of the public, and Defendant's rehabilitative needs, we believe the aggravated sentences imposed were reasonable under the circumstances.

## III. ORDER OF COURT

AND NOW, this 20th day of August, 2014, the Prothonotary/Clerk of Courts of Bedford County is hereby ordered to transmit the record in the above-captioned matter to the Prothonotary of the Superior Court of Pennsylvania in accordance with Pa.R.A.P. 1931(c).

BY THE COURT

_____
LIVENGOOD, J.

Counsel:
For the Commonwealth: William Higgins, Jr., District Attorney
For the Defendant: Anthony Zanoni, Esquire

---

[12] Since sentences were only imposed on eight counts due to merger, we therefore imposed concurrent, standard range sentences on over 60% of the counts.

10