Commonwealth v. Kaylor

C.P. of Berks County, No. 2474-2014

*Amy Rothermel*, for Commonwealth.
*Andrea E. Mertz*, for defendant.

BOCCABELLA, *J.*, Jan. 7, 2015—

## FINDINGS OF FACT

1. On February 14th, 2014 at approximately 2:15 P.M. officer John G. Phillips was patrolling in an un-marked Ford Expedition at a McDonald's parking lot "checking" on an occupied vehicle located at 810 Hill Ave., PA. Berks County. The vehicle in question was a blue 2004 Audi A4. As officer Phillips past the vehicle, he noticed the car running and the occupant discarded a cigar onto the parking lot surface.

2. Officer Phillips entered the vehicle registration into his computer and the results were "clean". The results reported that the owner was from Elizabethtown Lancaster County. Officer Phillips decided to approach the passenger side of the vehicle. He observed a male occupant sitting in the driver's seat eating McDonald's food.

3. Officer Phillips asked the defendant if everything is ok. The defendant replied 'Yes'. Officer Phillips proceeded to ask the defendant, what are you doing. The

defendant replied 'waiting for a friend'. Officer Phillips walked to the driver side and saw two cigar butts on the ground by the vehicle. He also observed additional cigars in the center console of the vehicle.

4. According to officer Phillips, the defendant appeared to nervous since his speech was low and shaky. The defendant seemed to be avoiding eye contact and his hands were trembling. Officer Phillips also reported that the defendants eyes were glassy and watery.

5. Officer Phillips asked the defendant his name and the defendant said "Ken". Officer Phillips continued and asked for his driver's license. The defendant responded 'I do not have one because it was suspended for a previous DUI'. Officer Phillips asked how long ago was the DUI. He stated "six (6) years ago". The defendant preceded to hand officer Phillips his Pennsylvania identification card which confirmed he was telling the truth about his name.

6. Officer Phillips checked the status of the defendant's operating privileges, and again found out the defendant was telling the truth about his suspended license. Officer Phillips immediately read the defendant section 1547 Chemical Testing Warnings from Penn Dot form DL-27. The defendant read the form and signed it. The defendant was arrested and transported to the Reading Hospital for a blood test at 3:06 pm. After the testing, officer Phillips took the defendant back to his vehicle and drove away.

7. The defendants BAC was 0.00%, with a positive result for Amphetamine (27 ng/ml) and Methamphetamine (300 ng/ml).

8. On October 22nd, 2013, a bill of information was filed charging Kenneth M. Kaylor with one count of driving under the influence of a controlled substance in violation of 75 Pa.C.S.A §3802(d)(1)(ii), count two driving under the influence of a controlled substance/drug in violation of 75 Pa.C.S.A §3802(d)(2), driving while operating privilege is suspended or revoked in violation of 75 Pa.C.S.A §1543(b)(1.1)(i), and driving while operating privilege is suspended or revoked in violation of 75 Pa.C.S.A §1543(b)(1).

## CONCLUSIONS OF LAW

1. "Where a defendant files a motion to suppress, the burdens of production and persuasion are on the Commonwealth to prove the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. West*, 834 A.2d 625 at 629 (Pa. Super. 2003), citing *Commonwealth v. Wilmington*, 729 A.2d 1160 (Pa. Super. 1999); *See also* Pa.R.Crim.P. 581(H).

2. Section 6308(b) of the Vehicle Code provides:

Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle upon

request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (Emphasis added).

3. "Thus, when an officer has reasonable suspicion a violation of the Vehicle Code is occurring or has occurred, he may interrupt the privileged operation of a vehicle on the public highways and stop the vehicle for the investigative purposes stated therein." *Commonwealth v. Chase*, 960 A.2d 108, 112 (Pa. 2008) citing 75 Pa. C.S.A. § 6308(b).

4. "To establish grounds for 'reasonable suspicion' ... the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." *Commonwealth v. Little*, 903 A.2d 1269, 1272 (Pa. Super. 2006) citing *Commonwealth v. Bennet*, 827 A.2d 469, 477 (Pa. Super. 2003) (citing *Commonwealth v. Cook*, 558 Pa.50, 735 A.2d 673, 676 (1999)).

5. "In order to determine whether the police had a reasonable suspicion, the totality of the circumstances-the whole picture-must be considered." *In the Interest of*

*D.M.*, 781 A.2d 1161, 1163 (Pa.2001) citing *United States v. Cortez*, 449 U.S. 411, 417 (1981).

6. In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa.1999) quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

7. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa.1999) quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

8. "Reasonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer." *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

9. "While it is argued the lesser standard [reasonable suspicion] will allow a vehicle stop to be made based on pretextual motives, the United States Supreme Court made clear that case law 'foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved.'" *Commonwealth v. Chase*, 960 A.2d 108, 120

(Pa. 2008) citing *Whren v. United States*, 517 U.S. 806, 813 (1996); *See also Commonwealth v. Foglia*, 979 A.2d 357, 361-62 (Pa. Super. 2009) (Stating that observations made after the officer intends to stop the defendant can be used to support their actions).

10. "[I]t is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009); *See also Commonwealth v. Costa-Hernandez*, 802 A.2d 671, 675 (Pa. Super. 2002); *See also Commonwealth v. Quiles*, 619 A.2d 291, 292 (Pa. Super. 1993) citing *Commonwealth v. Smith*, 577 A.2d 1387, 1388 (Pa. Super. 1990).

11. "In evaluating an accused's entitlement to pre-trial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a prima facie case that the defendant committed the crime with which he or she is charged." *Commonwealth v. Hock*, 728 A.2d 943, 945 (Pa. 1999); *See generally Commonwealth v. Rachau*, 670 A.2d 731, 733 n.5 (Pa. Commw. 1996) citing *Commonwealth v. Kowalek*, 647 A.2d 948, 949 (Pa. Super. 1994).

12. "A *prima facie* case of defendant's guilt exists, so as to satisfy Commonwealth's burden at pre-trial stage of criminal prosecution, when the Commonwealth produces evidence of each of the material elements of the crime

charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense." *Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003) citing *Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991) (citing *Commonwealth v. Wojdak*, 466 A.2d 991 (Pa. 1983)).

13. "The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001).

14. "In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Schmohl*, --- A.2d ----, 2009 WL 1451451, filed May 26, 2009.

15. "[I]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001) quoting *Commonwealth v. Owen*, 580 A.2d 412, 414 (Pa. Super. 1990).

16. The Motor Vehicle Code provides in pertinent part:

*(a) General impairment.* — (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable

of safely driving, operating or being in actual physical control of the movement of the vehicle. 75 Pa.C.S.A. § 3802(a)(1).

17. 75 Pa.C.S.A. § 3802(a)(1) is an "at the time of driving" offense, requiring that the Commonwealth prove that the accused was driving, operating, or in actual physical control of the movement of the vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol. *Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).

18. "The Commonwealth can establish that a defendant had 'actual physical control' of a vehicle through wholly circumstantial evidence." *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) quoting *Commonwealth v. Woodruff*, 668 A.2d 1158, 1161 (Pa. Super. 1995).

19. "The term 'operate' requires evidence of actual physical control of the vehicle to be determined based upon the totality of the circumstances." *Commonwealth v. Williams*, A.2d 14, 27 (Pa. Super. 2008) quoting *Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa. Super. 2005).

20. "Our precedent indicates that a combination of the following factors is required in determining whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the

vehicle." *Commonwealth v. Williams*, A.2d 14, 27 (Pa. Super. 2008) quoting *Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa. Super. 2005).

21. "[I]t is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009); *See also Commonwealth v. Costa-Hernandez*, 802 A.2d 671, 675 (Pa. Super. 2002); *See also Commonwealth v. Quiles*, 619 A.2d 291, 292 (Pa. Super. 1993) citing *Commonwealth v. Smith*, 577 A.2d 1387, 1388 (Pa. Super. 1990).

22. In this case officer Phillips observed the defendant discard a cigar while sitting in the driver's seat of the vehicle in a parking lot. Upon making contact with the defendant, officer Phillips reported that the defendant appeared too nervous since his speech was low and shaky. The defendant seemed to be avoiding eye contact and his hands was trembling. Officer Phillips also mentioned that the defendants eyes were glassy and watery.

It is important to note that the offenses for which the defendant was charged is a "at the time of driving" offense. The term "operate" in driving under the influence of alcohol DUI statute requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion *Commonwealth v. Johnson*,

833 A.2d 260, 263 (Pa. Super. 2003).

In determining whether a person had actual physical control of automobile to sustain conviction for driving under influence of a controlled substance, the following factors should be considered: whether the motor was running, the location of the vehicle, and any additional evidence showing that *the defendant* had driven the vehicle *Commonwealth v. Woodruff*, 447 Pa. Super. 222, 668 A.2d 1158, 1161 (1995). A determination of actual physical control of a vehicle, as required to sustain conviction for driving under the influence, is based upon the totality of the circumstances *Williams, supra* at 259. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle." *Johnson, supra* at 263. Showing that an intoxicated defendant started a parked car, without more, is *not enough* to prove actual physical control necessary to sustain driving under the DUI conviction. Commonwealth must show some additional facts to illustrate that the defendant was a danger to public safety.

According to *Commonwealth v. Brotherson* 888 A.2d 901 "In a majority of cases, the suspect location of the vehicle, which supports an inference that it was driven, is a key factor in a finding of actual control. *See Commonwealth v. Bobotas*, 403 Pa. Super. 136, 588 A.2d 518, 521 (1991) (finding actual physical control when

the defendant was found parked in an alley, where he had pulled over on the way home, with the motor running); *Commonwealth v. Crum*, 362 Pa. Super. 110, 523 A.2d 799, 800 (1987) (finding actual physical control when defendant was found sleeping in his parked car, along the side of the road, with the headlights on and the motor running). Conversely, where the location of a car supported the inference that it was not driven, the court rejected the inference of actual physical control. Specifically, in *Byers*, *supra*, they concluded that there was no actual physical control even though the motorist was found asleep behind the wheel of his running car, because the car had not been moved from the parking lot of the bar where the motorist became intoxicated."

In the present case, you have a similar circumstance where the defendant was found eating in a *parking lot*. The defendant was *legally* parked. There is no debate that the engine was on when officer Phillips found the defendant. It was in February (winter) and a reasonable inference is that it is *cold*, therefore the car would have to be active in order to produce heat. The defendant was truthful during the entire encounter and told officer Phillips, he was waiting for a friend. The two (2) cigar butts that officer Phillips saw on the ground, does suggest that the defendant was there for a long period of time. Furthermore, the defendant "never" said to officer Phillips that he drove the vehicle. Officer Phillips "assumed" that information. Either way the mere fact that the vehicle is operational is not enough

to establish a DUI.

Also, there is no evidence that the defendant had driven the vehicle while intoxicated. Officer Phillips did not see him drive the vehicle and he does not know how long the vehicle was parked in the lot before the encounter began. Additionally, it is not exactly clear why officer Phillips noticed this vehicle at the McDonald's parking lot at 2:15 pm. Furthermore, if discarding the cigar butts on the parking lot surface was the probable cause (shaky) for the stop, the court must wonder why the defendant wasn't charged for that violation. Even though littering is not a "vehicle code violation"

As you can see, the important factors are not present in this case. The vehicle was legally parked in a lot, no field sobriety tests were conducted, there are no PBT results, and officer Phillip did not smell the odor of an alcoholic beverage or drugs. Officer observed the defendant being nervous with glassy eyes (not red), "knowing" the defendant just smoked at least two cigars in an enclosed vehicle, which can clearly cause watery eyes. This is *not* a clear illustration of the very type of public safety danger that the DUI statute was designed to combat. The driver of the vehicle could have been the friend the defendant was waiting for. In *Brotherson*, the defendant was found guilty because of his location and a 40 ounce open beer bottle was found in the car. He was found on school property. The gate to the school yard was locked and the only way

on to the playground was to drive on the grass. This is the type of situation the statute was designed to prevent. Public safety was clearly an issue and was violated.

Lastly, on these facts (Byers), "a panel of this court held that the Commonwealth did not introduce enough evidence to show actual physical control. We held that the Commonwealth must show some additional facts to demonstrate that an intoxicated defendant is a danger to public safety beyond merely starting a parked car. *Id.* at 470. After noting that the purpose of the drunk driving laws is to keep intoxicated drivers off of the road and to protect the public at large, the Byers court stated: "In the present case, Byers never got onto the road and was not a threat to public safety. The Commonwealth is trying to encourage intoxicated people to 'sleep it off' before attempting to drive, yet it wants us to punish Byers for doing just that."

In this current situation, there is no inference that the defendant recklessly drove in anyway and had actual control of the vehicle. There was no alcohol or drugs seen or found in the vehicle and no one including officer Phillips observed the defendant driving the vehicle. The defendant was not a danger to the public. There was not sufficient probable cause for an arrest. Furthermore, the court would like to note that if officer Phillips truly believed that the defendant was incapable of safe driving, he would not have driven the defendant back to his vehicle after the

blood draw. The court finds that the Commonwealth has presented insufficient evidence to establish a *prima facie* case with respect to all counts.

23. The defendant's motion for suppression and motion for writ of habeas corpus is granted.

## ORDER

And now, this 7th day of January 2015, it is hereby ordered that the defendant's motion for suppression of the evidence is granted. Furthermore, the defendant's motion for writ of habeas corpus is granted.